James F. MULLINS, Plaintiff–Appellant,

v.

PFIZER, INC., Defendant–Appellee.

No. 1266, Docket 93–7985.

United States Court of Appeals,
Second Circuit.

Argued March 11, 1994.

Decided May 2, 1994.

Joseph E. Moukawsher, Groton, CT (Moukawsher & Moukawsher, of Counsel), for plaintiff-appellant.

Jonathan B. Orleans, Bridgeport, CT (Zeldes, Needle & Cooper, P.C., S. Dave Vatti, of Counsel), for defendant-appellee.

Before: FEINBERG, PRATT and MINER, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff James F. Mullins appeals from a judgment entered in July 1993 in the United States District Court for the District of Connecticut, Alan H. Nevas, J., in favor of Mullins's employer, defendant-appellee Pfizer, Inc. (Pfizer), in an action arising out of Mullins's early retirement from Pfizer. The court granted Pfizer's motion for summary judgment on all counts of Mullins's amended complaint.

Lurking in the background of this case are a number of significant issues of law concerning the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq. Most prominent among these are whether an employee who alleges that he voluntarily retired because of affirmative material misrepresentations by an administrator of an employee benefits plan has standing to sue under ERISA and, if he does, whether these allegations state a claim under ERISA. We answer both questions in the affirmative. On the record before us, however, we cannot resolve all of the key issues in this case. It is clear from the record, however, that the district court erred in granting summary judgment on Mullins's claims under ERISA and Connecticut law. As to those claims, we therefore reverse and remand for further proceedings. As to Mullins's remaining claim, which is under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq., we affirm.

## I.  Background

Mullins was employed for 34 years as a laboratory technician at Pfizer's plant in Groton, Connecticut.  On April 1, 1990, Mullins, then aged 57, signed an early retirement form and terminated his employment with Pfizer.  On May 16, 1990, Pfizer announced and published a new Voluntary Severance Option (VSO), for which Mullins would have been eligible had he not already retired.  Early retirement under the VSO offered benefits in addition to pre-existing Pfizer retirement benefits.  Employees enrolled under the VSO would receive lump-sum payments based on their length of service, pension status and number of unused vacation days.  In addition, for employees who were not vested in their pensions, the VSO extended eligibility for medical, dental and life insurance coverage for an additional 12 months following termination or until the terminated employee found employment elsewhere and became eligible for alternative coverage.  The VSO also offered up to $4,000 in educational or training assistance for a period of 24 months to enhance employability.

Mullins filed suit in October 1990 in the District of Connecticut, alleging that he had been wrongfully deprived of the benefits of the VSO.  His amended complaint alleged federal statutory claims for deprivation of retirement benefits by means of constructive discharge and fraudulent misrepresentation in violation of ERISA (First Count) and constructive discharge in violation of the ADEA (Second Count); and claims under Connecticut law for fraudulent misrepresentation and wrongful discharge (Third Count), breach of express or implied contracts (Fourth Count), and breach of the implied covenant of good faith and fair dealing (Fifth Count).  The amended complaint alleged, first, that while Mullins was an employee, Pfizer had discriminatorily enforced its attendance policies against him and, second, that shortly before his retirement, Pfizer had made deliberate misrepresentations to him about its plans to offer the VSO.

Pfizer moved for summary judgment on two grounds: first, that Mullins had failed to present any material evidence of constructive discharge as required to support his federal and state-law claims;  and second, that his state-law claims were preempted by ERISA.  Pfizer argued, furthermore, that ERISA "imposes no duty to disclose a potential severance benefit plan prior to its written publication to all employees."

The district court granted Pfizer's motion.  The court found that all of Mullins's claims arose out of his allegation of constructive discharge and that the record failed, as a matter of law, to support that allegation.  First, the court found no evidence that Pfizer had made working conditions so intolerable that a reasonable person would have felt compelled to resign.  *Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir.1985).  Second, the court construed the complaint to allege that Pfizer had constructively discharged Mullins by falsely denying that the VSO was under consideration and thereby encouraging him to take early retirement before the VSO went into effect.  The court held that no case law supported a finding of constructive discharge under such circumstances.  Because of his inability to establish constructive discharge, the court held that Mullins had no standing under ERISA, and that he could not establish his claims under ADEA, ERISA or state law.  The court thus found it unnecessary to reach other issues in this case.

## II.  Discussion

On appeal, Mullins does not challenge the district court's finding that no constructive discharge can be established.  Furthermore, he concedes that this finding disposes of his ADEA claim, the Second Count of the amended complaint.  Accordingly, we affirm the district court's dismissal of the Second Count.

Mullins does, however, challenge the grant of summary judgment on the remaining counts of the complaint, which pleaded, in the alternative, ERISA and state-law causes of action.  Mullins contends that, contrary to the court's opinion, those claims did not depend on constructive discharge and that therefore the court erred in disposing of them on that basis.

## A. Dismissal of the ERISA claim

The First Count of Mullins's amended complaint did allege his constructive discharge in violation of ERISA, but the count is not based solely on that allegation. It also alleges that Pfizer

> knew and deliberately concealed from the plaintiff Pfizer, Inc.'s decision, despite its recent public denials, to offer its employees a voluntary severance agreement providing up to a full year's salary to employees who would accept early retirement from Pfizer or volunteer to leave the company's employ.

The First Count further alleges that Pfizer's "deprivation of the plaintiff's rights under Pfizer's employee benefit plan caused the plaintiff great financial loss." The First Count thus makes an allegation against Pfizer for fraudulent misrepresentation in violation of ERISA, independent of any allegation of constructive discharge. We therefore disagree with the district court's finding that the lack of constructive discharge is sufficient to defeat the First Count. Summary judgment on this count was improper.

It remains to be determined, however, whether Mullins has stated in the First Count a cause of action under ERISA against Pfizer. By its terms, ERISA imposes duties only upon plan administrators and other "fiduciaries." *Mertens v. Hewitt Assocs.*, —— U.S. ——, ——, 113 S.Ct. 2063, 2066–67, 124 L.Ed.2d 161 (1993). Thus, ERISA does not authorize suits for money damages against nonfiduciaries. Id. at ——, 113 S.Ct. at 2067–71. For purposes of this opinion, we assume, as the district court did, that Pfizer is a plan "fiduciary" as defined by 29 U.S.C. §§ 1102 & 1002(21)(A).

## B. Questions on remand

Because the district court erred in basing summary judgment on the lack of constructive discharge, a number of significant issues were not decided or even considered below. On remand, the district court will be faced with the following questions, among others.

## B.1. Does ERISA apply to the VSO?

■ At the outset, the district court will have to determine whether ERISA applies to the VSO. ERISA applies if the VSO amended an existing ERISA plan or itself constituted a new ERISA plan. On the other hand, the VSO might not be an ERISA plan at all. Pfizer argued below, and continues to argue on appeal, that ERISA applies to the VSO. We are unable to make any such determination because of the sparseness of the record on these issues. On remand, the district court should allow further discovery to enable the parties to augment the record regarding them.

With regard to whether the VSO amended an existing ERISA plan, the record is unclear as to the nature of the existing employee benefits program in effect when Mullins retired. The district court did not address whether that program qualified as an ERISA plan and, if so, whether the VSO constituted an amendment thereof.

■ Nor did the district court consider whether the VSO itself constituted a new plan under ERISA. A one-time lump sum severance payment does not constitute a plan; such a payment "requires no administrative scheme whatsoever." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12, 107 S.Ct. 2211, 2218, 96 L.Ed.2d 1 (1987). Applying *Fort Halifax*, we have held that an employer's offer of severance payments consisting of 60 days' additional pay did not constitute a plan, even where employees had the option of receiving the money in biweekly installments rather than a one-time lump-sum payment. *James v. Fleet/Norstar Financial Group, Inc.*, 992 F.2d 463, 468 (2d Cir.1993). But cf. *Reichelt v. Emhart Corp.*, 921 F.2d 425, 430 (2d Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991) (severance benefits constituted an ERISA welfare benefit plan). While the VSO included a lump-sum payment, it also included other benefits.

## B.2. ERISA standing

■ If the district court finds that ERISA applies, it must then address the issue whether Mullins has standing to assert an

ERISA claim. A participant or beneficiary of an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The district court held that since Mullins was not constructively discharged, he was precluded from establishing his status as a plan participant,[1] which defeated his standing under ERISA.

ERISA defines a "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). According to the Supreme Court,

> [i]n order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.

*Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117–18, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989).

While Pfizer contends that ERISA does apply to the VSO, it also argues that Mullins has no standing to assert an ERISA claim because he retired before the VSO was ever offered. This raises an issue of first impression in this court, on which other circuits have split.

Under the approach followed by the First and Fifth Circuits, even though Mullins left Pfizer's employ before the VSO went into effect, he should be given the opportunity to show that but for the fact that Pfizer misled him, he would have been a "participant" in the VSO. *Vartanian v. Monsanto Co.,* 14 F.3d 697, 702 (1st Cir.1994), *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1220–23 (5th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992).

*Vartanian* presented a situation very similar to the present case. Vartanian alleged that his employer, Monsanto, had repeatedly denied rumors that it was considering offering enhanced early retirement benefits. Two months after Vartanian had retired and collected payment under the preexisting, less lucrative plan, Monsanto implemented an enhanced plan, which it had been considering all along. The First Circuit held that Vartanian should be allowed to make a "but for" showing, reasoning as follows:

> In reaching our conclusion, we rely on the fact that Vartanian did not know Monsanto had made misrepresentations to him and therefore, he could not have alleged a breach of fiduciary duty by Monsanto until after he had received payment under the 1986 Plan. To hold otherwise would imply that when an employer breaches its fiduciary duty to an employee under ERISA, the employee would have standing to sue only if the employee finds out all of the facts constituting the breach prior to his receipt of retirement benefits. Such a holding would enable an employer to defeat the employee's right to sue for a breach of fiduciary duty by keeping his breach a well guarded secret until the employee receives his benefits or, by distributing a lump sum and terminating benefits before the employee can file suit. The employee would have no standing to state a claim under ERISA, even where the employer's breach of fiduciary duty takes the form of misrepresentations that induced the employee to retire and receive the payment of benefits. Congress did not intend such unjust and arbitrary results.

14 F.3d at 702 (footnote omitted).

On the other hand, other circuits have rejected the "but for" test for ERISA standing in similar contexts. *Raymond v. Mobil Oil Corp.,* 983 F.2d 1528, 1536–37 (10th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993); *Stanton v. Gulf Oil Corp.,* 792 F.2d 432, 435 (4th Cir.1986). For example, the Tenth Circuit held in *Raymond* that the "but for" test "amounts to the kind of analysis rejected by the Supreme Court in *Firestone* "; that is, it " 'begs the question of

---

1. Under ERISA, a fiduciary generally owes a plan beneficiary—that is, "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder," 29 U.S.C. § 1002(8)—the same duties it owes a plan participant. Since Mullins does not claim to be a plan beneficiary, however, our analysis refers only to participants.

who is a "participant" and renders the definition set forth in [29 U.S.C.] § 1002(7) superfluous.'" 983 F.2d at 1536 (quoting *Firestone*, 489 U.S. at 117, 109 S.Ct. at 957).

We respectfully disagree with this characterization. Congress intended the statutory scheme, in conjunction with state law, to afford broad protection:

> The intent of the [Senate Labor and Public Welfare] Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due to participants.

S.Rep. No. 127, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4838, 4871. It is more consistent with legislative intent to afford standing in the present context. Furthermore, to hold otherwise would have the anomalous effect of allowing a fiduciary "through its own malfeasance to defeat the employee's standing." *Christopher*, 950 F.2d at 1221. In *Vartanian*, Judge Toruella noted for the First Circuit that the discussion in *Firestone* was not developed in the "standing" context and "did not mandate a finding" of lack of standing in the case before it. The First Circuit went on to hold that the basic standing issue is whether the plaintiff is "*within the zone of interests ERISA was intended to protect.*" 14 F.3d at 701 (citations and internal quotations omitted) (emphasis in original). We agree with that view.

### B.3. Was Pfizer under a duty not to make affirmative misrepresentations?

■ If the district court finds that an ERISA plan existed and that Mullins has standing to sue, the next question will be whether Pfizer's alleged conduct violated a duty under ERISA. In granting summary judgment to Pfizer, the district court referred to "the prevailing view that Pfizer had no duty to disclose future increases in its severance benefits." At least two circuits have indeed expressed this view. *Porto v.*

*Armco, Inc.,* 825 F.2d 1274, 1276 (8th Cir. 1987), cert. denied, 485 U.S. 937, 108 S.Ct. 1114, 99 L.Ed.2d 274 (1988); *Stanton v. Gulf Oil,* 792 F.2d at 435; see generally Edward E. Bintz, Fiduciary Responsibility under ERISA: Is There Ever a Fiduciary Duty to Disclose? 54 U.Pitt.L.R. 979, 990–996 (1993) (noting that the duty to disclose future changes is an "unsettled" issue). However, the district court focused on the wrong issue. The question presented is not whether Pfizer had such a general duty to disclose. Rather, the issue is much narrower: whether Pfizer had a duty, as a plan fiduciary, not to *affirmatively mislead* participants.

Two circuits have held that ERISA imposes such a duty on a plan fiduciary. *Fischer v. Philadelphia Elec. Co.,* 994 F.2d 130, 135 (3d Cir.),[2] cert. denied, —— U.S. ——, 114 S.Ct. 622, 126 L.Ed.2d 586 (1993); *Berlin v. Michigan Bell Telephone Co.,* 858 F.2d 1154, 1163 (6th Cir.1988); *Drennan v. General Motors Corp.,* 977 F.2d 246, 250–52 (6th Cir. 1992), cert. denied, —— U.S. ——, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993); cf. *Barnes v. Lacy,* 927 F.2d 539, 543–44 (11th Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 372, 116 L.Ed.2d 324 (1991). In *Berlin,* the "pivotal allegation" of the complaint was that the employer had "either knowingly or negligently made material misrepresentations" concerning changes to a plan while those changes were under "serious consideration." 858 F.2d at 1160, 1163. Employer representatives were repeatedly asked by employees about an early retirement plan. Both the employer's Vice President–Personnel and its district manager consistently denied that any plan was being considered. Id. at 1159. Under the circumstances, the court held that it was error to grant summary judgment to the employer on the ERISA claims of plaintiff employees.

Similarly, in *Fischer,* the complaint was based upon the allegation that the employer "misrepresented what was really going on when members of the plaintiff class asked if the Company was considering an early retirement plan." 994 F.2d at 134. One em-

---

2. The opinion in *Fischer* was written by the author of this opinion, sitting by designation in the Third Circuit. Of course, *Fischer* represents the law of that circuit, and not that of the Second Circuit.

ployee alleged that when he asked whether an early retirement plan would be offered, a benefits counselor answered, "absolutely not for at least the next five years." *Id.* The director of the benefits division of the employer's human resources department also denied that such a plan was forthcoming. *Id.* These allegations, the Third Circuit held, were sufficient to preclude summary judgment against the plaintiffs-employees who asserted an ERISA claim. *Id.* at 135.

■ We agree with the reasoning of these cases. We adopt the view that "[a] plan administrator may not make affirmative material misrepresentations to plan participants about changes to an employee pension benefits plan." *Fischer,* 994 F.2d at 135; accord *Berlin,* 858 F.2d at 1163–64. Like the *Berlin* and *Fischer* courts, we do not require an ERISA fiduciary to be perfectly prescient as to all future changes in employee benefits. 858 F.2d at 1164; 994 F.2d at 135. Nor do we require a fiduciary " 'to disclose its internal deliberations' " or to " 'interfere with the substantive aspects of the [collective] bargaining process.' " 994 F.2d at 135 (quoting *Drennan v. General Motors Corp.,* 977 F.2d 246, 251 (6th Cir.1992)). We do, however, hold that "when a plan administrator speaks, it must speak truthfully." *Id.*

The district court's statement of undisputed facts indicates that Mullins's allegation of misrepresentation presents a substantial issue. The court found that, prior to the May 16, 1990 announcement of the VSO, "the VSO was under consideration by Pfizer as of February, 1990." The court further found that prior to May 16, 1990, Pfizer maintained a policy of denying any rumors concerning the plan and that on February 9, 1990, in response to such rumors, "Pfizer announced to its employees that it was not considering offering an increased lump sum severance plan in the foreseeable future."[3] The court

also observed that Pfizer's alleged conduct was "disturbing" and warned that the court's grant of summary judgment "should not be construed as a license for employers to lie about prospective severance benefit plans as a means of inducing early retirement."

■ Pfizer stoutly maintains that it made no misrepresentations. Under *Fischer* and *Berlin,* however, the content of alleged statements attributable to Pfizer, as well as whether they constituted affirmative misrepresentations, are questions for the trier of fact. *Fischer,* 994 F.2d at 135. If an affirmative misrepresentation is found, whether it is "material" is "a mixed question of law and fact" based on whether "there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire." *Id.* Whether a plan is under "serious consideration" at the time a misrepresentation is made is relevant to materiality. *Id.* Cf. *Berlin,* 858 F.2d at 1163–64. "All else equal, the more seriously a plan change is being considered, the more likely a misrepresentation, e.g., that no change is under consideration, will pass the threshold of materiality." *Fischer,* 994 F.2d at 135.[4]

### B.4. State-law claims

■ It may be, as indicated in B.1 above, that the district court on remand will decide that the VSO is not an ERISA plan. In that event, Mullins's state-law claims will have to be decided. *James,* 992 F.2d at 468–69.

The district court granted summary judgment on the state law claims (Third, Fourth and Fifth Counts) on the theory that they all required a showing of constructive discharge. As already indicated, this was incorrect. The Third Count alleges that Mullins's constructive discharge was "concurrent with the defendant's willful and fraudulent misrepre-

---

3. In its brief, Pfizer maintains that this finding was unsupported by the record.

4. This is similar to the materiality test in cases involving securities transactions, where the materiality of facts relating to a particular event depends upon " 'both the indicated probability that the event will occur and the anticipated magnitude of the event.' " *Basic, Inc. v. Levinson,* 485 U.S. 224, 238, 108 S.Ct. 978, 987, 99

L.Ed.2d 194 (1988) (quoting *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 849 (2d Cir.1968) (Friendly, J.)). In the context of merger discussions, "interest at the highest corporate levels" is important to an assessment of probability; however, no one "factor, short of closing the transaction, is either necessary or sufficient to establish materiality." *Id.* at 239, 108 S.Ct. at 987.

670

sentations to the plaintiff concerning the pending severance package." That count further alleges that both the discharge *and* the misrepresentations caused Mullins "great financial loss." The Fourth Count alleges that Pfizer breached express and/or implied contracts by constructive discharge *and* misrepresentations, and that Mullins suffered financial loss thereby. Similarly, the Fifth Count alleges that the same actions breached the implied covenant of good faith and fair dealing between Pfizer and Mullins and caused Mullins financial loss. Under the circumstances, the district court's reason for granting summary judgment on these claims was insufficient.

The judgment of the district court is affirmed as to the Second Count and reversed as to the First, Third, Fourth and Fifth Counts. The case is remanded for further proceedings consistent with this opinion.