James F. MULLINS

v.

PFIZER, INC.

Civ. No. 2–90–cv–917 (JBA).

United States District Court,
D. Connecticut.

Sept. 6, 1995.

Joseph E. Moukawsher, Thomas G. Moukawsher, Moukawsher & Moukawsher, Groton, CT, for Plaintiff.

Jonathan B. Orleans, S. Dave Vatti, Zeldes Needle & Cooper, Bridgeport, CT, for Defendant.

### RULING ON DEFENDANT'S MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S JURY CLAIM

ARTERTON, District Judge.

Plaintiff, James F. Mullins, a former employee of defendant Pfizer, Inc., claims that in reliance on Pfizer's misrepresentations that no future severance packages were forthcoming, plaintiff took early retirement on April 1, 1990. Six weeks later, Pfizer announced a severance pay-based early retirement incentive plan (the Voluntary Separation Option, or "VSO") for which, plaintiff claims he would have been eligible and in which, he claims, he would have participated. Plaintiff brings this claim pursuant to the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001 *et seq.* and seeks the benefits he would have been entitled to by participating in the VSO if he had deferred his early retirement by the six additional weeks.

In his Third Amended Complaint, plaintiff claims that Pfizer, as plan administrator, breached its fiduciary duties to him both by making affirmative misrepresentations (First and Third Counts), and by failing to disclose that a VSO was under consideration at the time he made his inquiries related to his taking early retirement (Second and Fourth Counts). The First and Second Counts are pled as claims for equitable relief under 29 U.S.C. § 1132(a)(3), while the Third and Fourth Counts are pled as claims for benefits under 29 U.S.C. § 1132(a)(1)(B).

Defendant moves to dismiss Counts Two, Three and Four of the Third Amended Complaint for failure to state a claim for which relief may be granted pursuant to Fed. R.Civ.P. 12(b)(6). Defendant also moves to

strike plaintiff's demand for jury claim on Counts Three and Four.

For the following reasons, defendant's motion to dismiss will be granted in part, and denied in part, and defendant's motion to strike the plaintiff's jury trial will be denied.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was a laboratory technician at defendant's plant in Groton, Connecticut for approximately thirty-four years. Plaintiff left his employment with Pfizer on April 1, 1990 at age fifty-seven after executing an early retirement agreement. On May 16, 1990, Pfizer announced a new VSO for which Mullins would have been eligible had he not taken early retirement.

Under the VSO, enrolled employees received lump sum payments based on the term of employment, length of enrollment and unused vacation and received educational assistance for a period of twenty-four months up to a maximum of $4,000 for education or training. Those non-vested employees were given the right to continued health and life insurance benefits for a period of twelve months or until eligible for alternative coverage.

Plaintiff, as a vested employee, would have been eligible for the lump sum payment, but because he had retired six weeks earlier, he was no longer eligible. Plaintiff brought this suit in October, 1990 claiming that under ERISA he had been wrongfully deprived of benefits due to his constructive discharge and defendant's fraudulent misrepresentations. He also claimed that he had been discriminated against on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and in addition made common law claims sounding in fraud, wrongful discharge and breach of contract.

After discovery, Pfizer moved for summary judgment. The court granted Pfizer's motion, finding that plaintiff's claim of "constructive discharge" was integral to every count of the First Amended Complaint and it was beyond dispute that plaintiff had not been constructively discharged. In light of these findings, the court found that plaintiff did not have standing under ERISA nor could plaintiff establish his claims under ERISA, the ADEA or state law.

Plaintiff appealed this decision but conceded that he could not establish a claim for constructive discharge or a claim under the ADEA. The Court of Appeals for the Second Circuit reversed in part and affirmed in part in Mullins v. Pfizer Inc., 23 F.3d 663 (2d Cir.1994). The Second Circuit held that although the ADEA and constructive discharge claims had been abandoned, there were genuine issues of fact regarding the alleged affirmative material misrepresentations by Pfizer which did not warrant summary judgment on the ERISA and common law claims.

The Second Circuit left several questions to be resolved on remand. First, the court directed the district court to determine whether ERISA applies in this case and whether the VSO constitutes a new plan or a plan amendment. Also, the court directed the district court to determine whether plaintiff has standing to allege an ERISA claim and if so, whether Pfizer's alleged conduct violated a duty under ERISA, i.e., whether Pfizer violated its duty to speak truthfully.

After remand, plaintiff filed a Second Amended Complaint and stipulated to the dismissal, with prejudice, of his common law claims. Prior to trial and pursuant to the parties' agreement, plaintiff filed a Third Amended Complaint to clarify precisely what sections of 29 U.S.C. § 1132 were alleged to authorize plaintiff's claims.

In the First and Third Counts of the Third Amended Complaint, plaintiff alleges that Pfizer affirmatively denied that any severance package would be offered to its employees, and that employees should not delay their retirement plans hoping for such a package, notwithstanding that the company had already decided to offer a severance package or had such a package under serious consideration.

In the Second and Fourth Counts, plaintiff alleges that Pfizer failed to disclose, in response to plaintiff's inquiries concerning the early retirement benefits to which he would

be entitled, that the company had decided to offer an enhanced severance package or had such a package under serious consideration.

Under Counts One and Two, plaintiff claims that defendant breached its fiduciary duties owed to plaintiff and seeks injunctive and declaratory relief under 29 U.S.C. § 1132(a)(3) directing defendant to permit plaintiff to participate in the VSO. Under Counts Three and Four, plaintiff seeks plan benefits due him pursuant to 29 U.S.C. § 1109(a) "and/or" § 1132(a)(1)(B).

Also, plaintiff alleges in the First Count, incorporated by reference in the other counts, that the VSO is a new employee welfare benefit plan. Defendant stipulates that this allegation is consistent with the documentary evidence disclosed during discovery and expected to be introduced at trial.[1]

In its Motion to Dismiss, Pfizer argues that the Third and Fourth Counts must be dismissed because an individual participant's or beneficiary's claim for breach of fiduciary duty under ERISA must be brought pursuant to § 1132(a)(3) and not as a claim for benefits pursuant to § 1132(a)(1)(B). Defendant contends that the Second and Fourth Counts must be dismissed because ERISA does not impose on employers a fiduciary duty, at least absent specific inquiry, to disclose in advance the consideration of a new welfare benefit plan.

## DISCUSSION

The Court's inquiry on a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). The Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Scheuer v. Rhodes*, 416 U.S.

232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The statutory scheme of ERISA is designed to protect the interest of participants and beneficiaries in their pension and welfare benefits plans by requiring the disclosure and reporting to participants and beneficiaries of financial and other information, by establishing responsibilities, standards of conduct and obligations of fiduciaries of employee benefit plans and by providing certain remedies and ready access to the Federal courts. 29 U.S.C. § 1001(b).

Under ERISA, a fiduciary is required to discharge its duties with respect to a plan, solely in the interest of the participants and beneficiaries. 29 U.S.C. § 1104.[2] Section 1109(a) imposes liability on "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries ...." This section provides relief only to the plan itself, not individual recovery of extracontractual damages. *See, Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

Section 1132 provides six types of civil enforcement actions that can be brought by a participant or beneficiary. The remedies available relevant to this discussion provide that a civil action may be brought—

(1) by a participant or beneficiary—

(B) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

---

1. The court notes that in light of plaintiff's allegation in ¶ 10 of the Third Amended Complaint taken as true for the purposes of this motion only, the VSO is a new plan within the meaning of ERISA. As this is a jurisdictional matter, the court will make this finding based on the evidence at trial.

2. Section 1104 states that the fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
    (A) for the exclusive purpose of:
    (i) providing benefits to participants and their beneficiaries; ....

(2) by the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132.

In this case, the Court assumes that Pfizer is a plan fiduciary because no argument has been made otherwise. Pfizer does argue, however, that as to Counts Two and Four, because the VSO Plan had not gone into effect when the alleged misconduct took place, Pfizer as the VSO Plan fiduciary could not, by definition, have breached any duty. This Court does not accept this sterile demarcation of when fiduciary duties may begin and finds that there may be circumstances in which communications about the VSO may implicate fiduciary duties of truthfulness prior to the actual effective date. *See, Berlin v. Michigan Bell Telephone Co.,* 858 F.2d 1154 (6th Cir.1988). Alternatively, Pfizer's fiduciary duties as a *pension plan administrator* may have been triggered by plaintiff's inquiries related to taking early retirement. The determination as to whether defendant's fiduciary duties arose and whether they were properly discharged, cannot be ascertained as a matter of law on the face of the pleadings, but must await a full factual development at trial.

Plaintiff alleges in the Third and Fourth Counts that defendant breached its fiduciary duties imposed by § 1104 and Pfizer is liable for benefits pursuant to 29 U.S.C. § 1109(a) *and/or* § 1132(a)(1)(B). Defendant argues that these counts must be dismissed because an individual participant's or beneficiary's claim for breach of fiduciary duty under § 1109(a) cannot be brought as a claim for benefits pursuant to § 1132(a)(1)(B). Defendant argues that § 1132(a)(1)(B) is not the vehicle intended by Congress to enforce § 1109(a), but is meant only for enforcement of the terms of a plan. Defendant further argues that subsection (a)(2) is the means to enforce § 1109(a) and subsection (a)(3) is the vehicle for individual redress of breaches of fiduciary duty.

In his brief in response to defendant's Motion to Dismiss, plaintiff does not dispute that § 1132(a)(1)(B) does not provide individual recovery of damages for a breach of fiduciary duty under § 1109. Plaintiff instead asserts that § 1132(a)(1)(B) is the proper basis for recovery in this action because plaintiff is asserting a claim for plan *benefits,* not damages, due to defendant's breach of its fiduciary duties and breach of the terms of the VSO. Plaintiff asserts that if the court does not find that § 1132(a)(1)(B) allows a claim for benefits due to the defendant's breach of its fiduciary duties, then his claim for breach of the terms of the VSO, by itself, is sufficient to withstand a motion to dismiss.

While plaintiff does not dispute in his brief in response to the Motion to Dismiss that he cannot recover individual relief under § 1132(a)(1)(B) for violations of § 1109, plaintiff phrases his claim for relief in the Third Amended Complaint in the disjunctive, i.e., "§ 1109 and/or § 1132(a)(1)(B)." To the extent there is any doubt, the court concurs with the defendant's argument and plaintiff's concession that he is not entitled to enforce his § 1109 claim under § 1132(a)(1)(B), and Defendant's Motion to Dismiss will be granted in that limited respect. Plaintiff's claim will remain one for benefits under the terms of the VSO plan under § 1132(a)(1)(B).

■ Defendant's argument that plaintiff's claim cannot be brought under § 1132(a)(1)(B), because at its heart it is a claim for breach of fiduciary duty separate and distinct from a claim for benefits, brings us to another interrelated remanded issue left by the Second Circuit: whether plaintiff has standing to assert an ERISA claim for benefits as a plan participant, even thought he left Pfizer's employ before the VSO was offered.

The Second Circuit, recognizing this as an issue of first impression in the Circuit, adopted the approach of the First and the Fifth Circuits set forth in *Vartanian v. Monsanto Co.,* 14 F.3d 697 (1st Cir.1994) and

*Christopher v. Mobil Oil Corp.*, 950 F.2d 1209 (5th Cir.) *cert. denied,* —— U.S. ——, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992); that "even though Mullins left Pfizer's employ before the VSO went into effect, he should be given the opportunity to show that *but for* the fact that Pfizer misled him, he would have been a 'participant' in the VSO."[3] 23 F.3d at 667 (emphasis added). The court held that the purpose of ERISA is to provide broad protection and that the basic inquiry on the question of standing is whether plaintiff is "within the zone of interests ERISA was intended to protect." *Id.* at 668.

Here, the Court finds that plaintiff's claim is within the zone of interests ERISA was intended to protect, i.e., the opportunity to show entitlement to Plan benefits, absent the plan administrator's wrongful conduct. Plaintiff does not seek individual recovery of extracontractual damages, i.e., compensatory and punitive damages. *See, Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). He is seeking benefits he alleges would have been undisputedly due him, had he not been misled and remained employed for six more weeks. Contrary to defendant's assertion, the language of § 1132(a)(1)(B) does not preclude such relief, nor does its legislative history. In discussing the broad protections that Congress intended for ERISA's statutory scheme, the Second Circuit focused on the following:

> The intent of the [Senate Labor and Public Welfare] Committee is to provide the full range of *legal* and *equitable* remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles....

S.Rep. No. 127, 93d Cong., 2d Sess. (1974) *reprinted in* 1974 U.S.C.C.A.N. 4639, 4838, 4871.

Since the pre-ERISA common law antecedent of plaintiff's claim would have been negligent or intentional misrepresentation, ERISA should not be applied to take away such prior claims but to supplement them. Moreover, the essence of this pre-ERISA

claim "to recover benefits due to him under the terms of the plan ..." is necessarily a claim of wrongful deprivation by the fiduciary, i.e., a breach of some fiduciary duty. If the Court followed Pfizer's reasoning, that by its own acts it could disenfranchise plaintiff from "participant" standing, the result would run afoul of the reasoning of both the Second Circuit and *Vartanian, supra,* 14 F.3d 697, 702 (1st Cir.1994).

I conclude therefore that under the language of § 1132(a)(1)(B), the legislative history of ERISA and the Second Circuit's directives in *Mullins,* plaintiff is entitled to demonstrate that but for defendant's alleged affirmative material misrepresentations and/or failure to disclose material facts known to it under circumstances in which its silence constitutes an affirmative material misrepresentation, plaintiff would have been an eligible participant under the terms of the VSO. Having now determined plaintiff's standing, he may sue as a "but for" participant under § 1132(a)(1)(B).

■■■ The above analysis, predicated on the nature of the requested relief, is also related to the determination of whether plaintiff is entitled to a jury trial on these claims in Counts Three and Four. This issue is by no means a settled question in this Circuit. Although ERISA itself is silent on the issue of whether a trial by jury is appropriate, the Second Circuit has given indications that claims for unpaid benefits should be tried by a jury. *See, Haeberle v. Board of Trustees of Buffalo Carpenters Health Care, Dental, Pension and Supplemental Funds,* 624 F.2d 1132, 1136 (2d Cir.1980). *See also, Katsaros v. Cody,* 744 F.2d 270,. 278 (1984) *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984) (discussed *infra* ). Plaintiff's Third and Fourth Counts seek a legal remedy of his benefits, not equitable relief such as restitution, trustee removal or disgorgement, etc. Further, since these claims sound in tort or quasi-contract-type theory, they are traditionally actions involving rights and remedies typically enforced in an action at law in a jury trial. *See, Curtis v. Loether,* 415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1973). Additionally, where, as here, both legal and equitable claims are set

---

**3.** The Second Circuit noted that other Circuits have not adopted the "but for" approach. See *Raymond v. Mobil Oil Corp.,* 983 F.2d 1528,

1536–37 (10th Cir.) *cert. denied,* —— U.S. ——, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993); *Stanton v. Gulf Oil Corp.,* 792 F.2d 432, 435 (4th Cir.1986).

forth in the pleadings, the legal claim may be properly submitted to a jury. *See, Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 473, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962).

The sister courts within this Circuit have split on the issue of whether a plaintiff is entitled to jury trial under § 1132(a)(1)(b). Some have found that such claims are more appropriately tried to a jury. *See, Paladino v. Taxicab In. Pension Fund,* 588 F.Supp. 37 (S.D.N.Y.1984); *Garcia v. Danbury Hospital Corp.,* Civ. No. 5–90–cv–232(WWE), 1991 WL 23537 (D.Conn. January 9, 1991); *Abbarno v. Carborundum Co.,* 682 F.Supp. 179 (W.D.N.Y.1988); *Resnick v. Resnick,* 763 F.Supp. 760 (S.D.N.Y.1991); *Sullivan v. LTV Aerospace & Defense Co.,* 850 F.Supp. 202, 206 (W.D.N.Y.1994). Others have found that no such right to a jury trial exists under § 1132(a)(1)(B). *See, Nobile v. Pension Comm. of the Pension Plan for Employees of New Rochelle Hospital,* 611 F.Supp. 725 (S.D.N.Y.1985); *Gardella v. Mutual Life Ins. Co. of New York,* 707 F.Supp. 627 (D.Conn. 1988); *In re Emhart Corp.,* 706 F.Supp. 153 (D.Conn.1988); *Brock v. Group Legal Adm'rs, Inc.,* 702 F.Supp. 475 (D.Conn.1989); *D'Amore v. Strangle and Denigris, Inc. et al.,* Civ. No. 394–cv–1087(AVC) (D.Conn. May 19, 1995).

While the Second Circuit has not decided this issue definitively, the court's decision in *Katsaros v. Cody,* 744 F.2d 270 (2d Cir.1984) *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984) offers the most guidance. In *Katsaros,* the court held that the plaintiffs were not entitled to a jury trial due to the equitable relief sought by the plaintiffs of restitution and removal of the trustee in light of the plan administrator's misconduct. The court stated:

> Nor were appellants entitled to a jury trial of the claims against them since the plaintiffs seek equitable relief in the form of removal and restitution *as distinguished from damages for wrongdoing or non-payment of benefits.* There is no right to a jury trial of ERISA actions against pension fund trustees seeking the equitable remedy of restitution. (emphasis added).

*Id.* at 278.

The phrase "as distinguished from" certainly suggests that plaintiffs seeking damages or claims for denied benefits resulting from fiduciary wrongdoing, as opposed to restitution or removal of a fiduciary, are entitled to a jury trial. Some courts have found that this distinction was not intended by the Second Circuit. *See Wardle v. Central Southeast & Southwest Areas Pension Fund,* 627 F.2d 820 (7th Cir.1980) *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *Calamia v. Spivey,* 632 F.2d 1235 (5th Cir.1980). However, other courts have drawn on that distinction as authority for finding that a trial by jury is appropriate. *See Weber v. Jacobs Mfg. Co.,* 751 F.Supp. 21 (D.Conn.1990); *Sullivan v. LTV Aerospace & Defense Co.,* 850 F.Supp. 202 (W.D.N.Y.1994).

Inasmuch as this dispute is essentially legal in nature, both in terms of the tort-like liability theory and the damages claim for benefits, I am persuaded by the reasoning in *Sullivan v. LTV Aerospace, supra,* that a jury trial is proper. In concluding that a "civil action" for benefits under § 1132(a)(1)(B) may be tried to a jury, the *Sullivan* court reasoned that the pre-statutory custom for such § 1132(a)(1)(B) actions would have been a contract action of a sort in which the factual determinations were traditionally made by juries. The *Sullivan* court also found that the unfunded plan lacked any trust element and therefore equitable principles would be inapplicable. Although the jury will be asked to determine whether Pfizer's communications or non-communications violated its duty of care as a fiduciary, this kind of issue is typically and best resolved by a jury.

Defendant next argues that the Second and Fourth Counts fail to state a claim because Pfizer did not have any duty to disclose to its employees its internal deliberations regarding a severance plan, at least in the absence of a specific inquiry regarding the pendency of a severance package. Defendant finds it significant that plaintiff's complaint does not allege that he inquired whether there would be a severance package but only that he made inquiries about taking early retirement and asked for information concerning the benefits he would be entitled to.

Applying to Counts Two and Fourth the standards set forth by the Second

Circuit that "[a] plan administrator may not make affirmative material misrepresentations to plan participants" and "when [it] speaks, it must speak truthfully", *Mullins*, 23 F.3d at 668 & 669, I conclude that these counts are not dismissable under Rule 12(b)(6) because the determination of whether or not a duty of disclosure arose and was not discharged depends on the totality of circumstances as to the nature of plaintiff's inquiries about his early retirement benefits, including the degree of certainty that defendant had at that time as to the imminency of its VSO program announcement and the reasonable likelihood that such information would have caused plaintiff to alter his early retirement timing. I reject defendant's claim that defendant's duty of disclosure is triggered only by a specific inquiry from plaintiff. Here, plaintiff is claiming that he was initially misled by defendant's affirmative misrepresentations that there would be no severance package. If such misrepresentations were made and defendant knew of them, defendant had an affirmative duty to correct material misrepresentations that it knew or should have known plaintiff would rely on in timing his early retirement. Further, a fiduciary "has a duty not only to inform a beneficiary of new and relevant information as it arises, but also to advise him of circumstances that threaten interests relevant to the relationship." *Eddy v. Colonial Life Ins. Co. of America*, 919 F.2d 747, 750 (D.C.Cir.1990). A fiduciary must give complete and accurate information in response to participants' questions. This duty not to affirmatively misrepresent and to make necessary disclosures arises only once a prospective plan is under serious consideration and not to internal deliberations predating such serious consideration. *Mullins*, 23 F.3d at 667. *Vartanian v. Monsanto*, 14 F.3d 697 (1st Cir.1994); *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154, 1163 (6th Cir.1988); *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993).

█ When a plan administrator is speaking and advising a participant about early retirement, it is speaking as a fiduciary with a duty to speak truthfully, which implicates a duty to disclose material circumstances af-

fecting a participant's interests. A plan administrator's duty to speak truthfully is not an undue burden; it is simply a duty to be honest about material information it has in its possession which a participant has no other access to and will be materially affected by. This duty to be honest and truthful does not just attach once the plan is in place contrary to defendant's argument that there exists no fiduciary duty until there is a fiduciary relationship, and there can be no fiduciary relationship until the plan comes into existence and the employer steps into the role of a plan administrator. The opinion of the Second Circuit suggests that when the plan administrator makes any representation regarding a plan it must simply do so truthfully as to material issues. To implement the logic of the Second Circuit, I must reject defendant's argument. To adopt it would make the Circuit's discussion of duty a nullity as concerns new plans. I do not read the opinion as suggesting this unseemly result.

An affirmative material misrepresentation involves mixed law and fact questions as to whether "there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire." *Mullins*, 23 F.3d. at 667 (citations omitted). Thus, the duty of an administrator should not be determined solely by the specificity of a participant's inquiry, but instead depends on a full factual development of the circumstances. Accordingly, Counts Two and Four will not be dismissed. In this era of complex employee benefits plans, participants and beneficiaries rely on information provided by plan administrators. The requirement that the information be truthful and that a plan administrator not affirmatively misrepresent material facts by either words *or by silence* is a necessary concomitant to the important decisions that employees must make that are of such individual significance to them and their families.

## CONCLUSION

In summary, Counts Three and Four will be tried to a jury and Counts One and Two will be simultaneously tried to the Court. Accordingly, defendant's motion to dismiss [# 114] is denied as to Counts Two, Three

and Four, and granted in part as to Count Three to the extent it references § 1109. Defendant's motion to strike [# 114] plaintiff's demand for a jury trial as to Counts Three and Four is denied.

IT IS SO ORDERED.