**Joseph L. BALLONE; John Battey–Sipes; Mary Jane Beardsley; John Benson; Patricia Boddy; Paul John Boerschlein; Peter Borys; Albert Brown; Donald Brown; Gary Burnett; Edward Carlson; Guy Casaceli; Janet M. Christensen; John Cicotta; Finetta Cowman; Robert E. Dean; Joseph Dicicco; Matthew Dipietro; Edward Distler; Richard Docteur; Geraldine Dwaileebe; Lawrence E. Ellis; William R. Foley; Lawrence Forward; Kathleen Gibson; Thelma Gillette; Thomas Grieco; Creola Griffin; Robert Gutberlet; Richard Harter; Frederick Hartman; Carl L. Helbert; E. Bryan Helming; Marilyn Helming; James Hermance; Walter Hogan; James Holyman; Raymond Hunt; Guenther Kaschner; Catherine Kelsey; Anthony J. Kota; Donald Lage; Alvin Lentzer; Thomas Levy; Janice Lucky; John Ludwig; Gerald Manning; Robert Mason; Stuart McClarin; Neil McEachern; Ray Messenger; Edward Miller; Lawrence Minch, Sr.; Wilbur Minges;**

Dan Mook; William Murdoch, Jr.; Richard Mykins; Robert Nichol, Sr.; Richard Nolte; Charles Peterson; Harriett Pietak; Richard Potter; Judith Quitsch; John Radley; Wanda Radtke; Marie Rasbridge; James Reaves; Everett Rice; Ross Rumfola; Gerard Salber; William Savage; William Schaeffer; Sara Breeze Schutt; Donald Shaner; John Shuryn; Joseph Simpson; Thomas Sloey; Elmwood Snyder; James Thomas; Jack Townsend; James Triou; Eugene Wade; Harvey Warren; Elizabeth Wendt; William Wenzel; Richard Wheaton; Robert Wilson; Lawrence Wolfe; John R. Zeman, Plaintiffs–Appellants,

v.

EASTMAN KODAK CO.; Kodak Retirement Income Plan Committee; Kodak Retirement Income Plan; Kay R. Whitmore; John R. McCarthy; Cecil D. Quillen, Jr.; Paul Smith; Benefit Plans Committee, Defendants–Appellees.

Nos. 357, 358, Dockets 96–7209, 96–7212.

United States Court of Appeals,
Second Circuit.

Argued Nov. 6, 1996.

Decided March 21, 1997.

Norman M. Spindelman, Rochester, NY (John F. LaFave, Elizabeth A. Williams, Fix,

Spindelman, Brovitz, Turk, Himelein & Shukoff, P.C., Rochester, NY, on the brief), for Plaintiffs–Appellants.

Lonny H. Dolin, Rochester, NY (Karen R. Castner, Lonny H. Dolin & Associates, P.C., Rochester, NY, on the brief), for Plaintiff–Appellant Zeman.

Eugene Ulterino, Rochester, NY (David L. Hoffberg, J. Nelson Thomas, Nixon, Hargrave, Devans & Doyle, L.L.P., Rochester, NY, of counsel), for Defendants–Appellees.

(Ann Elizabeth Reesman, Robert E. Williams, McGuiness & Williams, Washington, DC, on the brief) for Amicus Curiae Equal Employment Advisory Council.

Before: FEINBERG, LEVAL and PARKER, Circuit Judges.

PARKER, Circuit Judge:

In this case, we are called upon to determine the circumstances in which alleged misrepresentations made by an employer to retirement plan beneficiaries about future plan amendments are actionable under the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104(a), which imposes a fiduciary duty on retirement plan administrators. Plaintiffs, all former employees of Eastman Kodak Company who retired between January 1 and July 1, 1991, contend that Kodak made affirmative misrepresentations that led them to believe that no enhanced pension plan would be forthcoming in the months following their retirement. Shortly after Plaintiffs retired, Kodak implemented a pension plan with benefits exceeding those of Plaintiffs' retirement plan. Plaintiffs thereafter brought suit in the United States District Court for the Western District of New York, alleging, among other things, that Kodak breached its fiduciary duty under ERISA. The district court (Michael A. Telesca, *Judge*) granted judgment to Kodak on Plaintiffs' claims under § 1104(a), and other related claims, concluding that because Kodak had not "seriously considered" changes to the retirement plan before Plaintiffs retired, Kodak's statements about future plan changes were neither material nor misleading. We conclude that because Kodak allegedly assured Plaintiffs that it had ruled out plan changes for the immediate future, when in fact it had not, the district court erred in determining that the absence of "serious consideration" of plan changes warranted judgment in Kodak's favor. Accordingly, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. *Kodak's Consideration of Retirement Plan Amendments*

As the district court found, throughout the 1980s, Kodak had been downsizing to cut costs. The company generally achieved its downsizing goals by offering special voluntary separation programs, known as Limited Separation Enhancements ("LSEs"), which offered severance pay and retraining allowances to targeted employees. Kodak provided these severance packages through its Termination Allowance Plan ("TAP"), which provided up to seventy-eight weeks severance pay depending on the employee's length of service. This program was distinct from Kodak's pension plan, the Kodak Retirement Income Plan ("KRIP").

In 1990, Kodak revised KRIP to eliminate the minimum age requirement for retirement and to provide partial or full pension benefits depending on the employee's age and length of service. Although the district court determined that the amendments were only intended to make the program more competitive in the industry and to respond to tax concerns, it is undisputed that KRIP induced more employees to retire and was therefore helpful to Kodak's downsizing efforts. Accordingly, after Kodak enhanced KRIP, the company essentially eliminated LSE and reduced severance pay under TAP to fifty-two weeks.

The district court found that in 1990 Kodak considered KRIP sufficiently generous that no amendments to the plan would be needed in the future. In the spring of 1991, however, Kodak formed a "downsizing task force" to evaluate and improve upon Kodak's past downsizing process. This included review of its pension and separation plans and review of the criteria used to target employees during downsizing. During this time, the

company's earnings decreased eleven percent from fiscal 1990, and its costs increased twenty percent.

In June of 1991, in response to the worsening economic condition of the company, Kodak instructed the heads of the Electronic Imaging Organization ("EIO") and the Commercial Imaging Group ("CIG") to seek ways to cut costs. The company did not specifically instruct them to target employees for downsizing. In July, the heads of the two divisions began to explore downsizing options. The district court found that Kodak discussed many scenarios but developed no specific plan. On July 19, 1991, the benefits manager at Kodak convened a conference call of all division managers regarding various issues relating to the downsizing, but the agenda for the call noted that the need for downsizing had not yet been confirmed.

In mid-July, Kodak's second-quarter earnings statement became available. The statement indicated that Kodak's operating goals were not being met and that Kodak's financial condition had deteriorated further. Accordingly, Kay Whitmore, the chief executive officer and chairman of the board of Kodak, instructed Kodak officials to consider various downsizing scenarios, preferring a voluntary discharge program funded by KRIP assets. He stated that Kodak needed to have a plan in place by mid-August.

The district court found that Whitmore's downsizing mandate was galvanized during a July 22, 1991, meeting between John McCarthy, senior vice-president of Kodak and president of Human Resources, and personnel relations directors of Kodak's various business groups. At the meeting, it became clear that the downsizing would extend beyond EIO and CIG to all of the company. On July 25, McCarthy informed the personnel relations directors that a voluntary downsizing program would be implemented, but it was still unclear which divisions would be targeted. Based on McCarthy's statements at the July 25 meeting, the district court concluded that as of July 25, 1991, Kodak's new retirement plan, the Resource Redeployment and Retirement Program ("RRRP"), was under "serious consideration" by Kodak.

After management meetings on July 28–30, Whitmore concluded that Kodak would have to sever 3000 employees. To this end, he instructed McCarthy to prepare a plan by August 2. It was to be a voluntary severance plan funded out of KRIP assets. The outline of the plan was established by August 2. The Board approved the plan on August 9. On August 12, Kodak announced it to the public. The plan, RRRP, provided full pension benefits to employees with seventy-five points (calculated based on the employee's age plus years in the company), plus fifty-two weeks severance pay, a social security bridge payment, and a $5000 retraining allowance. The severance pay, bridge payment, and retraining allowance were not available to Plaintiffs, who retired under KRIP, the plan RRRP replaced.

### B. Alleged Misrepresentations

Plaintiffs allege that during the time Kodak considered downsizing scenarios in 1991 it falsely assured them that no changes to its retirement plan were forthcoming. They allege that Kodak assured them that it would implement no retirement plan enhancements during 1991, that KRIP was a permanent plan for the future and that downsizing would not occur before at least 1992. Kodak allegedly told Plaintiffs that the 1990 KRIP plan would not change in the near future for various specific reasons, including the cost of such an enhanced program, government regulations, and the lack of any immediate need for a future enhanced benefits program. Plaintiffs claim that they left the company shortly before the RRRP benefits became available in August, in reliance on Kodak's statements.

### C. Proceedings Below

The district court held a bench trial limited to the question of whether Kodak "seriously considered" implementing RRRP at the time it made the alleged misrepresentations. Because the district court found that Kodak did not seriously consider implementing RRRP until July 25, 1991, it held that none of the alleged misstatements made before that date were material.

In limiting the scope of its materiality analysis to the serious consideration issue, the district court relied on *Mullins v. Pfizer, Inc.*, 23 F.3d 663 (2d Cir.1994) (Feinberg, J.), where this Court noted that the more seriously an ERISA plan change is being considered, the more material the misrepresentations become. *See id.* at 669. The district court interpreted *Mullins* to stand for the bright-line rule that, "at a minimum, pension plan changes must be under 'serious consideration' before a plan administrator can be held liable for making material misrepresentations about the plan to participants or beneficiaries."

Because the district court believed that the lack of serious consideration of RRRP by Kodak made any alleged misrepresentations immaterial, it did not examine any of the misrepresentations in detail. The court concluded, however, that because Kodak was not seriously considering future changes until July 25, 1991, any statements to Kodak employees made before that date telling them that Kodak had decided not to change the plan were not deceptive. The court also determined that the statements could not have been deceptive in light of a newsletter that Kodak distributed informing employees that Kodak's retirement plan could change.

For the foregoing reasons, the court determined that Kodak did not breach its fiduciary duty under ERISA, 29 U.S.C. § 1104(a). On substantially the same grounds, the court denied Plaintiffs' claims that Kodak illegally discriminated against them in the effort to defeat their entitlement to plan benefits, in violation of ERISA, 29 U.S.C. § 1140. The district court also granted judgment for Kodak on Plaintiffs' common-law estoppel claims. This appeal followed.

## II. DISCUSSION

■ ERISA imposes a fiduciary duty on employers with retirement plans to act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a).[1] We held in *Mullins v. Pfizer* that a plan administrator may not make affirmative material misrepresentations about proposed future changes to an employee benefit plan. *See* 23 F.3d at 669. Such misrepresentations are actionable as a breach of fiduciary duty under ERISA. *See id.; see also Pocchia v. NYNEX Corp.*, 81 F.3d 275, 278 (2d Cir. 1996). Here, we consider the contours of that holding. We first address the district court's conclusion that "serious consideration" of a plan change is a prerequisite to materiality, where a plan fiduciary makes alleged misrepresentations to ERISA plan beneficiaries leading them to believe that future plan changes have been ruled out. We hold that it is not. We next address the court's conclusion that absent serious consideration of plan changes, no statement about future plan benefits can be misleading. We disagree with the district court's conclusion on this point as well.

### A. *Materiality*

■ In ruling that Kodak's alleged misrepresentations were immaterial, the district court erred in attributing talismanic significance to its finding that Kodak's future retirement plan, RRRP, was not under serious consideration at the time Kodak allegedly misled Plaintiffs. Where an ERISA fiduciary makes guarantees regarding future benefits that misrepresent present facts, the misrepresentations are material if they would induce a reasonable person to rely upon them. *See Mullins*, 23 F.3d at 669; *see also Kurz v. Philadelphia Elec. Co.*, 994 F.2d 136, 140 (3d Cir.1993) (Feinberg, J., sitting by designation) ("[T]he ultimate inquiry is

---

**1.** Subsection (a) of the statute provides, in relevant part:

(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; ...

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and like aims. ...

29 U.S.C. § 1104(a)(1)(A)–(B).

whether there is a 'substantial likelihood' that the affirmative misrepresentation 'would mislead a reasonable employee in making an adequately informed decision about if and when to retire.'" (quoting *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir.1993) (Feinberg, J., sitting by designation))). Whether a plan is under serious consideration is but one factor in the materiality inquiry. *See Mullins*, 23 F.3d at 669; *Kurz*, 994 F.2d at 140.

Contrary to the district court's interpretation, *Mullins* did not establish a bright-line rule that serious consideration of a future plan is a prerequisite to liability for misstatements regarding the availability of future pension benefits. There we stated only that if a misrepresentation is found, "[w]hether a plan is under 'serious consideration' at the time a misrepresentation is made is *relevant* to materiality." 23 F.3d at 669 (emphasis added). " '[T]he more seriously a plan change is being considered, the more likely a misrepresentation ... will pass the threshold of materiality.' " *Id.* (quoting *Fischer*, 994 F.2d at 135).

The district court found support for its interpretation of *Mullins* in *Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154 (6th Cir. 1988). In *Mullins* we cited *Berlin* with approval for the proposition that an employer "need not be perfectly prescient as to all future changes in employee benefits." *Mullins*, 23 F.3d at 668 (citing *Berlin*, 858 F.2d at 1164). We also cited *Berlin* in support of the proposition that whether a plan is under serious consideration at the time a misrepresentation is made is relevant to materiality. *See id.* at 668. We did not, however, hold that future changes must be under serious consideration before an employer may be liable for affirmative misstatements regarding those changes. *Mullins*, 23 F.3d at 669. Rather, we adopted the simple view that " 'when a plan administrator speaks, it must speak truthfully,' " regardless of how seriously any changes are being considered. *Id.* (quoting *Fischer*, 994 F.2d at 135).

In establishing a rule that there can be no material misrepresentation about a pension plan not yet under "serious consideration," the district court relied on language in *Berlin*

that we did not endorse in *Mullins*. After holding that an employer has a fiduciary duty not to misrepresent the possible future availability of a plan under discussion, the court in *Berlin* went on to "point out that in the case of an unfunded plan ... there can be no misrepresentations about a future offering until that point in time (a question of material fact) when serious consideration has been given" to the plan. *Berlin*, 858 F.2d at 1164. The district court drew upon this dictum for its bright-line rule. Under *Mullins*, however, an employer's serious consideration of changes to a plan is but one aspect of the *materiality* of the alleged misrepresentations, not a prerequisite to the fiduciary's *duty* to speak truthfully when making disclosures to plan beneficiaries. *See* 23 F.3d at 669.

Our conclusion in *Mullins* that a plan administrator has a fiduciary duty not to make material misrepresentations regarding the availability of future plan benefits is squarely in accord with the Supreme Court's recent decision in *Varity Corp. v. Howe*, —— U.S. ——, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Although *Varity* did not address the materiality of an employer's misstatements, it established that the scope of the employer's fiduciary duty under ERISA is broad. *See* —— U.S. at —— - ——, 116 S.Ct. at 1073–75. The Court considered a case where the employer made misrepresentations about the security of its employees' non-pension benefits to induce them to transfer to a division of the company that the employer had created as a dumping ground for its failing businesses. *See* —— U.S. at —— - ——, —— - ——, 116 S.Ct. at 1068–69, 1071–72. The employees eventually lost their benefits when the division went into receivership. *See id.* at ——, 116 S.Ct. at 1069. The Court held that "[t]o participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense[ ] is not to act 'solely in the interest of the participants and beneficiaries,' " as ERISA requires. *Id.* at ——, 116 S.Ct. at 1074.

In *Varity*, the Court applied "common-law trust standards 'bearing in mind the special nature and purpose of employee benefit

plans.' " *Id.* at ——, 116 S.Ct. at 1075 (citation omitted). The Court could find "no adequate basis ..., in the statute or otherwise, for any special interpretation that might insulate [the employer], acting as a fiduciary, from the legal consequences of the kind of conduct (intentional misrepresentation) that often creates liability even among strangers." *Id.* The employer's misrepresentations included "repeated reassurances that benefits would remain 'unchanged,' [a] detailed comparison of [the old and new] benefits, and ... assurances about [the new subsidiary's] 'bright' financial future." *Id.* at ——, 116 S.Ct. at 1074. The employer made these assurances about the employees' future benefits knowing perfectly well that the new division would likely fail. *Id.* at —— ——, 116 S.Ct at 1068–69.

 Applying these trust-law principles, it is clear that Kodak may not actively misinform its plan beneficiaries about the availability of future retirement benefits to induce them to retire earlier than they otherwise would, regardless of whether or not it is seriously considering future plan changes. Kodak has a duty to deal fairly and honestly with its beneficiaries. *See id.* at —— ——, 116 S.Ct. at 1074–75; *cf. In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255, 1266–67 (3d Cir.1995) ("The district court's findings that the company actively misinformed its employees by affirmatively representing to them that their medical benefits were guaranteed once they retired, when in fact the company knew this was not true and that employees were making important retirement decisions relying upon this information, clearly support a claim for breach of fiduciary duty under ERISA."), *cert. denied,* —— U.S. ——, 116 S.Ct. 1316, 134 L.Ed.2d 469 (1996).

 If an employer allegedly makes false assurances about future benefits, the materiality of the misstatements turns primarily on the nature and the context of the assurance.

Whether consideration is being given to altering a pension plan at the time the misrepresentation is made is relevant to materiality, for the reasons we stated in *Mullins,* but it is not a prerequisite. Regardless of whether the employer is seriously considering altering its retirement plan, the employer's false assurance that future enhancements have been ruled out for some specific period can be decisive in inducing an employee to hasten retirement, rather than delay in the hope of receiving enhanced future benefits. This aspect of the assurance can render it material regardless of whether future changes are under consideration at the time the misstatement is made.

This conclusion follows from the breadth of an ERISA fiduciary's trust obligations under *Varity* and the nature of the materiality inquiry under *Mullins.* It is also consistent with precedent under the securities laws relating to affirmative misrepresentations, to which we looked in *Mullins* for guidance in crafting ERISA materiality rules. *See Mullins,* 23 F.3d at 669 n. 4 (stating that materiality analysis under ERISA is analogous to the test under the securities laws (citing *Basic, Inc. v. Levinson,* 485 U.S. 224, 238, 108 S.Ct. 978, 986–87, 99 L.Ed.2d 194 (1988)). Under the securities laws, an assurance about the future that by necessary implication misrepresents present facts is clearly actionable. *See ZVI Trading Corp. Employees' Money Purchase Pension Plan and Trust v. Ross (In re Time Warner Inc. Sec. Litig.),* 9 F.3d 259, 266 (2d Cir.1993) (assurances may be actionable if made without a basis in fact (citing *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1093, 111 S.Ct. 2749, 2758–59, 115 L.Ed.2d 929 (1991); *Goldman v. Belden,* 754 F.2d 1059, 1068–69 (2d Cir.1985))). Such statements are material if they would induce reasonable reliance. *See Sandberg,* 501 U.S. at 1090, 111 S.Ct. at 2756–57.[2]

---

2. We note the difference between the duty of full disclosure under the securities laws and the disclosure obligations imposed on employers under ERISA. We refer here to securities law precedent only insofar as it is relevant to determining the materiality of affirmative misrepresentations. *See Pocchia,* 81 F.3d at 278 ("Insisting on volun-

tary disclosure during the formulation of a plan and prior to its adoption would, we think, increase the likelihood of confusion on the part of beneficiaries and, at the same time, unduly burden management, which would be faced with uncertainty as to what to disclose and when to disclose it.").

 Determining the materiality of false assurances like those here alleged is fact-specific and will turn on a number of factors, including: how significantly the statement misrepresents the present status of internal deliberations regarding future plan changes, *see Mullins*, 23 F.3d at 669; the special relationship of trust and confidence between the plan fiduciary and beneficiary, *see Varity*, —— U.S. at ——, 116 S.Ct. at 1075; whether the employee was aware of other information or statements from the company tending to minimize the importance of the misrepresentation or should have been so aware, taking into consideration the broad trust responsibilities owed by the plan administrator to the employee and the employee's reliance on the plan administrator for truthful information, *see In re Unisys Corp.*, 57 F.3d at 1263–64; and the specificity of the assurance, *cf. Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1032 (2d Cir.1993) (outlining analogous factors courts consider under the securities laws).[3] Whereas mere mispredictions are not actionable, *see Mullins*, 23 F.3d at 668, false statements about future benefits may be material if couched as a guarantee, especially where, as alleged here, the guarantee is supported by specific statements of fact. *Cf. Malone v. Microdyne Corp.*, 26 F.3d 471, 479 (4th Cir.1994) (misleading prognostications may be material under the securities laws if they are "supported by specific statements of fact or are worded as guarantees").

A guarantee implies that current facts support it—in this case, that Kodak had made a decision not to implement plan changes in the immediate future for various specific reasons—and if the guarantee necessarily misrepresents such facts it may be materially misleading. Of course, the guarantee must be realistic. In most circumstances, an employee probably cannot rely upon a representation that the employer has decided never to alter its benefits package, for example, because such a statement is too speculative and unbelievable to "mislead a reasonable employee in making an adequately informed decision about if and when to retire." *See Mullins*, 23 F.3d at 669 (internal quotation omitted).

Based on these standards, it is far from clear that Kodak's alleged misrepresentations were not material. Plaintiffs contend that Kodak told them that it definitely would not implement a new retirement program in the near future. If Kodak had not actually made such a decision, this could be a material misrepresentation since Plaintiffs also allege that they would have delayed retiring if they had known that no such decision had been made. Plaintiffs further allege that Kodak supported these false assurances with various other statements of fact, including the representation that financial considerations precluded the need for a plan for at least another two years and that government regulations prohibited any amendments to the plan. The district court should consider each of the alleged misrepresentations in light of the framework outlined here, to determine if reliance on them was reasonable. "Serious consideration" of plan changes is not the sine qua non of materiality.

*B. Misrepresentation*

The district court determined that Kodak's statements to the effect that "no pension enhancements were forthcoming" were truthful because, at the time Kodak made the statements, it was not seriously considering enhanced future benefits. We disagree. The district court did not examine any of the statements in detail, and therefore failed to consider Plaintiffs' allegations that Kodak stated that it had reached a decision not to amend its pension plan when in fact it had not made such a decision.

In ruling that Kodak's statements were truthful when made, the district court again relied on *Mullins*, in this instance for the

---

**3.** In determining justifiable reliance under Rule 10–b of the securities laws, we noted in *Brown* that courts have been guided by the following factors:

(1) The sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of longstanding business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) ...; and (8) the generality or specificity of the misrepresentations.

991 F.2d at 1032.

proposition that, absent serious consideration of plan changes, no statement regarding future plan benefits can be misleading. In *Mullins,* however, we held only that a company's policy of denying rumors that it was considering an enhanced lump-sum severance package, when the plan was "under consideration," made the misrepresentation question one for the trier of fact. *See* 23 F.3d at 669. We did not state that serious consideration of future benefits is necessary before such statements can be misleading. The district court also relied on *Wilson v. Southwestern Bell Tel. Co.,* 55 F.3d 399, 405 (8th Cir.1995), for the proposition that "[t]he statements cannot be considered misrepresentations absent evidence that [the corporation] was seriously considering additional plans in the future." *Wilson,* however, explicitly noted that the employer did not tell its employees that a decision not to offer future benefits had been made. *See* 55 F.3d at 405 n. 4. Plaintiffs allege that Kodak made such statements here.

■■■ Plaintiffs allege that Kodak gave them definite assurances that no new benefits would be forthcoming when it knew that plan changes might well be made in the near future. They also allege that Kodak made various false statements of fact to support the assurances. If these allegations are true, a question which the district court did not address, the statements may well have been misleading. While it is correct, as the district court ruled, that Kodak need not be prescient, an employer does not enjoy carte blanche to make statements that the employer knows to be false, or that have no reasonable basis in fact, simply because the statements concern the future. *See Mullins,* 23 F.3d at 669.

Our conclusion is not altered by evidence of a September 6, 1990, issue of the "Kodakery," Kodak's employee newsletter, which informed employees that changing economic conditions could result in further amendment to Kodak's retirement plan. The district court found the newsletter relevant to determining whether Kodak made affirmative misrepresentations. Even if the newsletter's statements were true when made, that would not necessarily prevent other statements, es-

pecially later ones, from being misleading. Determining whether any single statement allegedly made by Kodak is an actionable misrepresentation requires considering the statement's meaning in context. The district court should examine all alleged statements within the total mix of information available to Plaintiffs, including the newsletter. The newsletter's statements might be relevant in determining a reasonable interpretation of ambiguous later statements, and thus whether those statements were misrepresentations.

■■■ If the court determines that Kodak made misrepresentations regarding future benefits, the availability to Plaintiffs of truthful information countering the misrepresentations will be relevant in determining if they reasonably relied on the misrepresentations. *See Sandberg,* 501 U.S. at 1097, 111 S.Ct. at 2760 ("While a misleading statement will not always lose its deceptive edge simply by joinder with others that are true, the true statements may discredit the other one so obviously that the risk of real deception drops to nil.") (proxy statements); *In re Unisys Corp.,* 57 F.3d at 1263–64 (company policy of "systematically" misinforming employees that medical benefits were permanent held material under ERISA despite summary plan document informing employees that benefits could change at any time). On remand, it will fall to the district court to consider the newsletter in light of the other factors that are relevant to materiality, in accordance with the framework we have outlined in this opinion.

### III. CONCLUSION

For the reasons stated above, we vacate the judgment of the district court dismissing Plaintiffs' fiduciary duty claims and remand for further proceedings consistent with this opinion. Because the district court dismissed Plaintiffs' other claims on substantially the same grounds as it dismissed Plaintiffs' fiduciary duty claims, we vacate the district court's judgment with respect to those claims as well.