John E. MATTHEWS, Plaintiff,

v.

XEROX CORPORATION, a New York Corporation; Hewitt Associates, LLC, an Illinois business entity; Xerox Income Retirement Guarantee Plan and Does 2 through 50, inclusive, Defendants.

No. CIV.02–CV–2339–WQH.

United States District Court, S.D. California.

April 23, 2004.

A. Melissa Johnson, Law Office of Morgan JC Scudi, San Diego, CA, for Plaintiff.

Daniel W. Kelsberg, Walsh and Furcolo, San Diego, CA, Richard J. Pautler, Patricia A. Winchell, Thompson Coburn, St Louis, MO, for Defendants.

### AMENDED ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HAYES, District Judge.

Defendants Xerox Corporation, The Xerox Income Retirement Guarantee Plan, and Hewitt Associates, LLC (collectively "Defendants") move this Court pursuant to Federal Rule of Civil Procedure 56 for summary judgment in their favor. On March 25, 2004, this Court heard the parties oral arguments and now issues the following amended order.[1]

### A. *Factual Background*

Plaintiff John E. Matthews ("Plaintiff" or "Matthews") is a retired employee of Xerox Corporation and was entitled to a pension benefit under the Xerox Corporation Retirement Income Guarantee Plan (the "plan"). *Statement Undisputed Facts*, ¶ 1. Under the plan, a participant's retirement benefit is the largest of the benefit amounts computed based on five different formulas. *Attachment A to Affidavit of Arlyn Kaster*, § 4.2. In Plaintiff's case, the value of Plaintiff's Transitional Retirement Account was the highest and therefore the appropriate amount. *Statement Undisputed Facts*, ¶ 3. The plan provides that the valuation date for that account is the first business day after the later of (1) the first day of the month following the month in which Plaintiff retired; (2) the date Plaintiff's pension election paperwork was received by the Xerox

Benefits Center; or (3) the thirteenth (13) day from the date the Xerox Benefits Center sent the pension election paperwork to Plaintiff. *Summary Plan Description, Exhibit B to Affidavit of Arlyn Kaster*, p. 63. The plan further provides that if the valuation date falls on a day that the New York Stock Exchange ("NYSE") is not open, then the valuation will occur on the next day the NYSE is open. *Id.*

On August 28, 2001, Plaintiff called the Xerox Benefits Center and requested the appropriate paperwork to request a distribution of his account. *Third Amended Complaint* ("TAC"), ¶ 13. The August 28, 2001, request was Plaintiff's second request for the necessary paperwork to request a distribution of his account. Plaintiff previously requested and Defendant sent the required paperwork in April, 2001. However, Plaintiff did not complete that paperwork within the prescribed 90 day period and the earlier forms expired. *Transcript of August 28, 2001 Telephone Call between Plaintiff and representative from Xerox Benefits Center, Exhibit E to Kaster Affidavit.*

At the time of the August 28, 2001, request Plaintiff was advised that because of a system error, combined with the need to manually prepare some of the information, the paperwork Plaintiff requested would not be sent for one to two weeks. *Id.* at pp. 3–6. On September 10, 2001, the Xerox Benefits Center mailed Plaintiff the necessary information and paperwork in response to his August 28, 2001 request. *TAC*, ¶ 13. On September 11, 2001, terrorists attacked the World Trade Center in New York City and the Pentagon in Washington, D.C. Thereafter, the United States financial markets significantly

---

**1.** The original order issued in this case contained an error in the caption stating that Defendant's motion was granted in part and denied in part. The caption has been amended to read "Order Granting Defendant's motion for summary judgment." The remainder of the Order is unchanged.

dropped in value, including the NYSE, negatively affecting Plaintiff's account.

On September 14, 2001, Plaintiff called the Xerox Benefits Center and told them that he had not received the requested paperwork to request a distribution. *Exhibit F to Kaster Affidavit.* On September 19, 2001, the Xerox Benefits Center sent a second copy of the original paperwork by overnight delivery, which Mr. Matthews completed and returned. *Kaster Affidavit,* ¶ 9. The Xerox Benefits Center received Plaintiff's completed paperwork on September 21, 2001. *Id.* at ¶ 10. The first day of the month following Plaintiff's retirement was May 1, 2001. The first day the New York Stock Exchange was opened following the thirteenth day from the date the Xerox Benefits Center sent Plaintiff the paperwork for electing payment of a pension benefit was September 24, 2001. Plaintiff requested that his benefit be paid in a lump sum rolled over to his account in the Xerox 401(k) Savings Plan. *Exhibit H to Kaster Affidavit.*

Plaintiff's benefit was initially calculated using a September 21, 2001 valuation date. *Exhibit E to Kaster Affidavit.* The lump sum amount of $669,432.64 (based on the September 21, 2001 valuation date) was rolled over to Plaintiff's 401(k) account on October 26, 2001. *Kaster Affidavit,* ¶ 12.

On October 31, 2001, Plaintiff's attorney wrote to the Xerox Benefits Center objecting to the use of September 21, 2001 as the valuation date and stating his belief that the proper valuation date was October 2, 2001. *Exhibits C & D to Kaster Affidavit.* On May 24, 2002, Plaintiff's attorney sent a follow-up letter to Defendants. *Exhibit C to Kaster Affidavit.*

On June 17, 2002, Arlyn Kaster, Manager, Pension and Life Insurance Benefit Programs for Xerox, wrote to Plaintiff's counsel advising that she had reviewed the issues raised in the letters and advising that the valuation date should have been September 24, 2001—the first day the New York Stock Exchange was open following 13 days from September 10, 2001 (when the Xerox Benefits Center sent the necessary paperwork to Plaintiff). *Exhibit D to Kaster Affidavit.* In addition, Ms. Kaster advised Plaintiff that as a result of the change in valuation date Plaintiff was entitled to an additional $14,171.66—which was deposited into Plaintiff's 401(k) account on June 12, 2002. *Exhibit D to Kaster Affidavit.* The value of Plaintiff's account on September 24, 2001 was $683,604.40. *Kaster Affidavit,* ¶ 11.

Thereafter, Plaintiff instituted the instant suit claiming that Defendants should have valued his account prior to September 11, 2001. In his Third Amended Complaint, Plaintiff alleges causes of action for (1) breach of fiduciary duty and (2) for plan benefits pursuant to E.R.I.S.A. § 1132(a)(1). Plaintiff's Third Amended Complaint alleges that he is entitled to the value of his account prior to September 11, 2001. *TAC,* ¶ 19.

### B. *Legal Standard*

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment always bears the initial burden of establish-

ing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The moving party may meet this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. 2548. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party satisfies its initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting FED. R. CIV. P. 56(e)) (internal quotations omitted).

In ruling on a motion for summary judgment, "[t]he district court may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1030 (9th Cir.2001). Therefore, the court is not obligated to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996) (citing *Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir.1995)). The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. "Credibility determinations [and] the weighing of evidence ... are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

In ruling on a motion for summary judgment a Court may grant summary judgment in a party's favor on all or any part of the claims and defenses presented. *See Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.,* 860 F.Supp. 1448, 1450 (C.D.Cal.1993). "In cases that involve ... multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some parties, but not as to others." *Barker v. Norman,* 651 F.2d 1107, 1123 (5th Cir.1981); *see also Robi v. Five Platters, Inc.,* 918 F.2d 1439 (9th Cir.1990)

## C. *Discussion*

Defendants move for summary judgment on grounds that: (1) a plain reading of the plan documents demonstrates that Plaintiff has received the entire benefit to which he is entitled and no further benefits are due; (2) Defendants did not breach any fiduciary duty and a constructive trust form of relief is not available to Plaintiff; and (3) if the plan is not clear, then the plan administrator must be given the opportunity to consider Plaintiff's request— and Plaintiff has failed to exhaust his administrative remedies by presenting his claims to the plan administrator. *See Mot,* p. 8.

### (1) *Defendants are Entitled to Summary Judgment on Plaintiff's Cause of Action for Unpaid Benefits*

Defendants argue that September 24, 2001, is the appropriate date to determine the value of Plaintiff's account under the formula provided by the plan and that they valued Plaintiff's account using the September 24, 2001 date. *Mot.*, p. 8. Under the terms of the plan the valuation date is the first business day after the later of (1) the first day of the month following the month in which Plaintiff retired; (2) the date Plaintiff's pension election paperwork was received by the Xerox Benefits Center; or (3) the thirteenth (13) day from the date the Xerox Benefits Center sent the pension election paperwork to Plaintiff. *Summary Plan Description, Exhibit B to Affidavit of Arlyn Kaster*, p. 63.

On August 28, 2001, Plaintiff called the Xerox Benefits Center and requested the appropriate paperwork necessary to request a distribution of his account. *TAC*, ¶ 13. On September 10, 2001, the Xerox Benefits Center mailed Plaintiff the necessary information and paperwork in response to his August 28, 2001 request. *TAC*, ¶ 13. The Xerox Benefits Center received Plaintiff's completed paperwork on September 21, 2001. *Kaster Affidavit* at ¶ 10. Therefore, the latest date for valuation under the plan formula is September 24, 2001—the date upon which Defendants ultimately valued Plaintiff's account.

Plaintiff disagrees with Defendants' argument that the appropriate valuation date was September 24, 2001. In his Third Amended Complaint, filed on July 25, 2003, Plaintiff alleges that his account should have been valued prior to September 11, 2001 and that he is entitled to the value of his plan prior to that date. *TAC*, ¶ 19. Despite three amended complaints, Plaintiff now, in his opposition to the motion for summary judgment, changes his theory for recovery. Plaintiff's new theory for recovery is that the "date which his retirement funds should have been valued is October 1, 2001." *Opposition*, p. 2.

In furtherance of Plaintiff's new position, he asserts that Defendants have not put forth any "documentary proof" that they sent Plaintiff the paperwork on September 10, 2001. *Opposition*, p. 2. Plaintiff's complaint, however, contradicts his new found position. Plaintiff's Third Amended Complaint alleges "Defendants delayed and did not send the new form until September 10, 2001." *TAC*, ¶ 13. A statement in a complaint is a judicial admission. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir.1988). "Under federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." *Id.* Indeed, "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing with the need for proof of the fact." *Id.* (*quoting In re Fordson Engineering Corp.*, 25 B.R. 506, 509 (Bkrtcy. E.D.Mich.1982)).

At oral argument the Court questioned Plaintiff's counsel concerning this allegation in the Third Amended Complaint. Plaintiff's counsel argued that the allegation in the Third Amended Complaint was made before counsel had the opportunity to investigate the facts and theories of the case. However, Plaintiff's argument is belied by the fact that the *Third* Amended Complaint was filed more than eight months after the original complaint was filed.

The Court finds that Defendants have satisfied their initial burden of presenting evidence that negates an essential element of the Plaintiff's case. Defendants have demonstrated that they valued Plaintiff's account on the correct date. In

any case, Defendants' demonstrate that Plaintiff is not entitled to a valuation prior to September 11, 2001—the claim asserted in the Third Amended Complaint.

Because Defendants have satisfied their initial burden, Plaintiff must come forward with evidence showing some genuine factual dispute. If the moving party satisfies its initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson*, 477 U.S. at 252, 106 S.Ct. 2505 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting FED. R. CIV. P. 56(e)) (internal quotations omitted).

■ Here, Plaintiff has attempted to change the fundamental theory upon which his Third Amended Complaint relies to avoid summary judgment. Plaintiff's attempts fail. There is no dispute as to material fact that the proper date to value Plaintiff's account is September 24, 2001. The Court is mindful that case law indicates that a plaintiff may not raise a new theory of liability for the first time, after the close of discovery, in his opposition to summary judgment without amending his complaint. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291–92 (9th Cir.2000); *see also Klein v. Boeing Co.*, 847 F.Supp. 838, 844 (W.D.Wash.1994).

■ Here, discovery was not closed at the time Defendant's motion was filed. Therefore, Plaintiff is not estopped from raising this new theory based on *Coleman*.

However, disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court finds that Plaintiff's new legal theory is irrelevant.

Plaintiff's attempt to defeat summary judgment fails to put forth any facts or evidence to refute Defendant's motion. Plaintiff attempts to manufacture a dispute by arguing Defendants have not provided "documentary evidence" of the September 10, 2001 mailing date. However, Plaintiff offers no *evidence* to challenge Defendants' contention that the forms were mailed on September 10, 2001 and Plaintiff's *own complaint* confirms the September 10, 2001 mailing. Accordingly, the Court finds as a matter of law that the correct valuation date for Plaintiff's account was September 24, 2001.

Defendants are entitled to summary adjudication on Plaintiff's claim for plan benefits. Defendants have presented undisputed evidence that Defendants paid and Plaintiff received an initial $669,432.64 approximately one month following the initial valuation of his account. Further, following Defendants' re-valuation of Plaintiff's account, on June 12, 2001, Defendants deposited an additional $14,171.66. This amount represents the total benefit to which Plaintiff was entitled using the September 24, 2001 valuation date. To the extent that Plaintiff contends that he is entitled to interest on the $14,171.66 for the nine months it was held by Defendants the Court points out that only benefits specified in the plan may be recovered in a suit under section 502(a)(1)(B). Therefore, a suit for interest that could have been earned on benefits that were delayed is only possible where a plan provides for

such a remedy or benefit. *See Clair v. Harris Trust,* 190 F.3d 495, 497 (7th Cir. 1999); *see also Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Plaintiff has not presented any evidence that the plan contemplates the payment of interest in this case. Accordingly, the Court **GRANTS** summary judgment for Defendants on Plaintiff's second cause of action for plan benefits.

### (2) *Plaintiff's Claim(s) for Breach of Fiduciary Duty & Constructive Trust*

Defendants additionally move for summary judgment on Plaintiff's claim(s) for breach of fiduciary duty and constructive trust on two grounds: (1) Defendants have not breached a fiduciary duty owed to Plaintiff and (2) a constructive trust is not available to Plaintiff in the circumstances of this case based on governing case law. *Motion,* p. 13.

### (a) Plaintiff's Breach of Fiduciary Duty Claim

■■ E.R.I.S.A. permits a plan participant to bring a cause of action for breach of fiduciary duties in certain instances. E.R.I.S.A § 502(a)(2). E.R.I.S.A. requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and the beneficiaries." 29 U.S.C. § 1104(a). This encompasses a "duty to deal fairly and honestly with beneficiaries." *Ballone v. Eastman Kodak Co.,* 109 F.3d 117, 124 (2d Cir.1997). The exercise of discretionary authority or responsibility in granting or denying claims for benefits constitutes a fiduciary function. *See Pacificare, Inc. v. Martin,* 34 F.3d 834, 838 (9th Cir.1994). However, the performance of solely nondiscretionary claims processing, investigatory, and record-keeping duties is not a fiduciary function under E.R.I.S.A. *See Klosterman v. Western Gen. Management,* 32 F.3d 1119, 1123 (7th Cir.1994).

Plaintiff alleges that "Xerox and Hewitt were charged with the administration, management and control of Plaintiff's retirement account in The Plan, thereby creating a relationship of trust and fiduciary duty pursuant to 29 U.S.C. §§ 1002(21) and 1104 between Plaintiff, on one hand, and Defendants Xerox and Hewitt, on the other." Further, Plaintiff's cause of action for breach of fiduciary duty alleges that "Defendants breached their fiduciary duty to Plaintiff by delaying providing the appropriate forms for Plaintiff and delaying processing Plaintiff's funds in his retirement account within The Plan." *TAC,* ¶ 18.

In addition, Plaintiff alleges "Plaintiff's account should have been valued before prior to September 11, 2001 and Plaintiff is entitled to the value of his plan prior to September 11, 2001." *TAC,* ¶ 19. Defendants argue that they did not breach any fiduciary duty they may have owed to Plaintiff. Defendants argue that Plaintiff received the funds he was entitled to 31 days after his account was valued. *Motion,* p. 15. Defendants argue that 31 days is well within the "reasonable time" provided by the plan. *Id.* The Court examines each of Plaintiff's asserted grounds for its breach of fiduciary duty claim in turn.

### (1) Plaintiff's Claim that a Delay in Providing Plan Distribution Paperwork is a Breach of Fiduciary Duty

First, Plaintiff asserts that Defendants breached their fiduciary duty to Plaintiff by delaying providing the appropriate forms to Plaintiff. *TAC,* ¶ 18. The evidence before the Court is to the contrary. Defendants initially provided Plaintiff with the necessary paperwork to enable him to request a distribution of his account in

April, 2001. *Transcript of August 28, 2001 Telephone Call between Plaintiff and representative from Xerox Benefits Center, Exhibit E to Kaster Affidavit,* p. 1. Plaintiff took no action with respect to the provided paperwork until August, 2001 (over four months). *Id.* On August 28, 2001, Plaintiff contacted Defendants to indicate that he wished to request a distribution of his account and required the necessary paperwork. *TAC,* ¶ 12. At the time of the August 28, 2001, request Plaintiff was advised that because of a system error, combined with the need to manually prepare some of the information, the paperwork Plaintiff requested would not be sent for one to two weeks. *Transcript of August 28, 2001 Telephone Call between Plaintiff and representative from Xerox Benefits Center, Exhibit E to Kaster Affidavit,* at pp. 3–6.

On September 10, 2001, the Xerox Benefits Center mailed Plaintiff the necessary information and paperwork in response to his August 28, 2001 request. *TAC,* ¶ 13. On September 14, 2001, Plaintiff called the Xerox Benefits Center and told them that he had not received the requested paperwork to request a distribution. *Exhibit F to Kaster Affidavit.* On September 19, 2001, the Xerox Benefits Center sent a second copy of the original paperwork by overnight delivery, which Mr. Matthews completed and returned. *Kaster Affidavit,* ¶ 9. The Xerox Benefits Center received Plaintiff's completed paperwork on September 21, 2001. *Id.* at ¶ 10. On October 26, 2001 Plaintiff received a distribution of $669,432.64. *Id.* at ¶ 12.

 The undisputed evidence is that Defendants promptly provided Plaintiff with the necessary paperwork to request a distribution of his account. The evidence presented reveals that Plaintiff decided on his own to wait four months before initially requesting a distribution. Further, the Defendants acted promptly in providing Plaintiff with new paperwork and informed him of certain delays based on system problems and unique aspects of Plaintiff's account. Defendants even sent additional plan documents via overnight mail after Plaintiff informed Defendants that he had not received the new forms. There is simply no evidence offered by Plaintiff that demonstrates any breach of fiduciary duty with respect to Defendants' issuance of plan distribution paperwork to Plaintiff.

**(2) Plaintiff's Claim that He is Entitled to the Value of His Account Prior to September 11, 2001 and Defendants Have Not Valued His Account in Accordance with that Date.**

Plaintiff's second ground for his breach of fiduciary duty claim is that "Plaintiff is entitled to the value of his plan prior to September 11, 2001." *TAC,* ¶ 19. However, as discussed above, the Defendants correctly valued his plan using the date of September 24, 2001. Therefore, this ground for Plaintiff's breach of fiduciary duty claim fails.

**(3) Defendants' Alleged Delay in Distributing Plaintiff's Account**

The third ground Plaintiff relies on to support his breach of fiduciary duty claim is that Defendants breached the fiduciary duty they owed to Plaintiff by delaying distribution of Plaintiff's account following valuation of his account. The lump sum amount of $669,432.64 (based on the September 21, 2001 valuation date) was rolled over to Plaintiff's 401(k) account on October 26, 2001—approximately one month following the initial valuation of his account. *Kaster Affidavit,* ¶ 12. In addition, following Defendants' review of Plaintiff's letters, Defendants determined Plaintiff's account should have been valued using the September 24, 2001 date and

Defendants deposited an additional $14,171.66 on June 12, 2002. *Exhibit D to Kaster Affidavit.*

Plaintiff points to no term in the plan which requires payment in a shorter amount of time. Plaintiff simply states that he seeks discovery on the issue of the reasonableness of the timing of the payments. In addition, Plaintiff offers no evidence of bad faith on the part of Defendants.

■ With respect to the distribution of the first $669,432.64 a one month delay in the distribution of those funds is reasonable. *See Clair v. Harris Trust & Savings Bank,* 190 F.3d 495 (1999). The delay with respect to the payment of the additional $14,171.66 may or may not be reasonable. Defendants delayed in distributing those funds for approximately nine months. Defendants' brief acknowledges that Plaintiff's counsel wrote to "the Xerox Benefits Center on October 31, 2001 and objected to the use of September 21, 2001 as the valuation date of Plaintiff's account." *Mot.,* p. 9. Following, that letter Defendants "reexamined" the valuation date. *Id.* Defendants subsequently concluded that Plaintiff's account should have been valued using September 24, 2001, as the valuation date.

However, Defendants did not distribute the additional $14,171.66 until June 12, 2002. *Id.* at p. 7. Defendants failed to offer any explanation or evidence showing why this approximately nine month delay in distribution of the additional funds was reasonable. On the other hand, Plaintiff offers no evidence that the delay was unreasonable or that Defendants acted in bad faith. On the record before it, this Court cannot determine whether Defendants' delay in distributing the $14,171.66 was reasonable, or whether the delay constituted a breach of fiduciary duty. Therefore, the Court turns to Defendants' argument that regardless of whether or not Defendants breached a fiduciary duty the form of relief Plaintiff seeks for that cause of action is barred.

### (b) Plaintiff's Claim for a Constructive Trust

■ Section 502(a)(3) of E.R.I.S.A. permits a plaintiff to seek "appropriate equitable relief." Equitable relief as used in that section means "something less than all relief." *Mertens v. Hewitt Associates,* 508 U.S. 248, 258, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Equitable relief does not include money (compensatory) damages. *See Bast v. Prudential Insurance Co. of America,* 150 F.3d 1003, 1010 (9th Cir.1998). In determining whether a form of relief is permitted under "appropriate equitable relief" provision of E.R.I.S.A. the Court must look past the parties' chosen labels to the substance of the relief sought. *Westaff v. Arce,* 298 F.3d 1164, 1166 (9th Cir.2002).

■ Plaintiff argues that the delay in payment of funds by Defendants was an unreasonable delay that requires this Court to enter equitable relief. *Opposition,* p. 5. Plaintiff seeks relief in the form of a constructive trust on "the Plaintiff's funds used by Defendants for which Defendants benefited and that Defendants be declared the trustee of any benefit they gained by their possession and use of Plaintiff's funds." *TAC,* pp. 4–5. As the Court has previously determined that the correct valuation date was September 24, 2001 and that Plaintiff received the initial payment of $669,432.64 within a reasonable time, the only possible funds over which a constructive trust would apply is Defendants' profits (if any) on the remaining $14,171.66.

Defendants rely on *Bast v. Prudential Ins. Co.,* for their position that a constructive trust is not an available remedy in this

case. *Mot.*, p. 15. In *Bast*, the Ninth Circuit held that:

> Imposition of a constructive trust for breach of a fiduciary duty is an appropriate remedy under ERISA in some cases. [citations omitted] In both *Waller* and *Murdock*, we imposed a constructive trust upon the employers' "ill-gotten profits" from breach of their fiduciary duties. In both cases an identifiable portion of the beneficiaries' pension plans had been improperly taken from them.

*Bast v. Prudential Ins. Co.*, 150 F.3d 1003, 1011 (9th Cir.1998). However, a constructive trust is not always an available remedy to a plaintiff. In *Bast*, the Ninth Circuit held that the amount of money the plan in that case saved by not paying for a medical procedure was not an "ill-gotten profit" and therefore a constructive trust was not an available remedy in that case. *Bast*, 150 F.3d at 1011. The *Bast* Court concluded that a constructive trust under the facts of that case would amount to the equivalent of money damages. *Id.* The *Bast* Court further held that "because no funds were taken from the Plan, there are no 'ill-gotten' profits to return to the Plan." *Id.*

Here, Plaintiff, like the plaintiffs in *Bast*, is seeking monetary damages under the label of constructive trust. In *Bast*, a showing that the plan did not pay for a procedure for which it should have paid was not enough to support a constructive trust remedy. In the absence of a showing that funds were taken from the plan by defendants—the Court would not impose a constructive trust. Here, neither Xerox nor Hewitt (the named Defendants to the cause of action for breach of fiduciary duty) have any portion of Plaintiff's pension benefit. Plaintiff has received all the money he was entitled to under the plan. Further, there is no evidence that any of Plaintiff's money was removed from the plan by Defendants or that Defendants profited by the delay in the distribution of the $14,171.66.

Accordingly, the Court finds as a matter of law that Plaintiff is not entitled to a constructive trust remedy over Defendants' alleged profits realized by retaining the $14,171.66 for nine months. Because Plaintiff is not entitled to the remedy he seeks for his cause of action for breach of fiduciary duty- the Court grants Defendants' motion for summary judgment on that cause of action.

### (1) *Exhaustion of Plaintiff's Administrative Remedies*

As the Court finds that Defendants are entitled to summary judgment on both of Plaintiff's asserted causes of action the Court does not reach the issue of whether Plaintiff exhausted his administrative remedies.

### D. Conclusion

Having reviewed the papers submitted, the parties' oral arguments and the relevant law **IT IS HEREBY ORDERED THAT** Defendants' motion for summary judgment is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of Defendants in accordance with this Order.

**IT IS SO ORDERED.**