# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-3907

RANDALL A. BEACH,

*Plaintiff-Appellee,*

*v.*

COMMONWEALTH EDISON COMPANY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 00 C 3357—**Joan Humphrey Lefkow**, *Judge.*

Petition for Rehearing and
Rehearing En Banc

DECIDED—NOVEMBER 17, 2004

Before POSNER, EASTERBROOK, RIPPLE, MANION, KANNE, ROVNER, WOOD, EVANS, WILLIAMS, and SYKES, *Circuit Judges.*

Plaintiff-appellee filed a petition for rehearing and rehearing en banc on September 7, 2004. A majority of the judges on the panel voted to deny rehearing. A judge called for a vote on the petition for rehearing en banc, but a majority of the active judges did not favor rehearing en

banc.[Œ] Accordingly, the petition is denied.

RIPPLE, *Circuit Judge*, with whom EVANS, *Circuit Judge*, joins, dissenting from the denial of rehearing en banc. This decision merits the attention of the full court in an en banc proceeding. Under the panel's holding an employer-administrator speaks as an ERISA fiduciary *only* when it speaks about new benefits created by an *amendment* to an established benefit plan under which the employer and employee have a preexisting fiduciary relationship, as opposed to when that employer-administrator speaks about benefits in a *new* plan. Such a narrow view cannot exist comfortably with the rationale of *Varity Corporation v. Howe,* 516 U.S. 489 (1996). Moreover, as noted later in this opinion, there is a division among the circuits that frustrates the even-handed enforcement of the statute and, consequently, the intent of the Congress in ensuring protection for employees' benefits plans.

*Varity* stands at least for the proposition that, when a company such as ComEd becomes a fiduciary to an employee with respect to an ERISA "plan," then its fiduciary duties of loyalty and care *can* attach to representations made regarding new plans under which the employer and employee do not have a preexisting fiduciary relationship. *Varity* gave no hint, and neither have subsequent cases, that the critical distinction a court must draw in determining whether an employer-administrator spoke in a fiduciary

---

[Œ] Chief Judge Flaum did not participate in the consideration of the petition for rehearing en banc.

status is whether that employer spoke about an "amend-ment" to an existing plan or about a "new" plan.

It would be intolerable to allow an employer-administra-tor to avoid the ramifications of its fiduciary status by simply attaching the label "new plan"—as opposed to "plan amendment"—to the subject of its misrepresentations. Furthermore, at least in the situation in which an em-ployer-administrator is offering enhanced, sweetened benefits to induce early retirement or separation, the line between a plan "amendment" and a "new" plan is indeed blurry and easily distracts from the critical issue. The enhanced benefits can form the basis of a totally "new" plan; they can be added as "amendments" to an existing plan; or they can be part of a plan that "supplements" an existing plan. Regardless of the label, under *Varity*'s reasoning, the critical factor is that there is a nexus between the new benefits about which the employer speaks and the existing plan under which an employer-employee fiduciary relation-ship already exists.

In the present case, Mr. Beach participated in ComEd's retirement pension plan and its health-care plan; he and ComEd had a fiduciary relationship with respect to these plans. The Voluntary Separation Plan ("VSP") at issue, in essence, supplemented or amended these existing plans with further retirement benefits. Importantly, the bene-fits in the retirement plan and the health-care plan cannot be untied from the VSP, which offered, inter alia, severance pay that would supplement his pension benefits and health benefits that would replace, upon retirement, his benefits under the health-care plan. Thus, *Varity* fully supports the conclusion that when ComEd misrepresented the status of the VSP and its future plan-related benefits, it was "administer[ing]" the retirement plan and the health-care

plan, and thus acting in a fiduciary capacity.[1]

The panel opinion, in dicta, expresses the view that an employer's duty of accurate disclosure does not begin until it has "seriously considered" the future offering. *See* slip op. at 6-7.[2] Some courts of appeals early developed this litmus test in an attempt to balance the competing Congressional goals embodied in the ERISA statute of safeguarding employee benefits plans, without making those plans so

---

[1] My colleagues seem to agree that representations about new benefits that have a nexus to benefits in an existing plan which the employer and employee have a fiduciary relationship constitute fiduciary acts under *Varity*, regardless of the label attached to the new benefit (e.g., amendments, new plan or supplement plan). *See* slip op. at 5 ("*Varity* shows that candid and complete information is required if two plans are in existence, and the sponsor tries to persuade employees to give up benefits under one in exchange for benefits of the other."). They appear, however, to elevate form over substance by drawing an artificially tight nexus between those new, future benefits and the benefits in the existing plan. *See id.* at 3-4 (rejecting that ComEd operated as a fiduciary when it misrepresented to Mr. Beach the VSP's status, because "the plan under which Beach wants (and was awarded) benefits does not amend or modify any of ComEd's other plans—nor did Beach have to choose between its benefits and those of the plans in which he was a participant. . . . [The VSP] does not amend, supplement, or replace any other plan.").

[2] A plan is under "serious consideration" when "(1) a specific proposal (2) is being discussed for purposes of implementation (3) by senior management with the authority to implement the change." *Fischer v. Philadelphia Elec. Co.*, 96 F.3d 1533, 1539 (3d Cir. 1996). The majority of circuits have employed this approach. *See* slip op. at 5-6.

If "serious consideration" were the appropriate threshold, Mr. Beach's claim fails because at the time ComEd communicated the misinformation, ComEd had no "specific proposal" for a severance package before senior management.

burdensome that employers would be discouraged from offering them. *See Hockett v. Sun Co.*, 109 F.3d 1515, 1522-23 (10th Cir. 1997).

Other courts of appeals have rejected the "serious consideration" prerequisite because it creates a "free zone for lying" to employees about the availability of a future plan while that plan is being formed but has not yet become a specific proposal presented for senior management's approval. *See Martinez v. Schlumberger, Ltd.*, 338 F.3d 407 (5th Cir. 2003) (adopting the approach of *Ballone v. Eastman Kodak Co.*, 109 F.3d 117 (2d Cir. 1997)). Instead, these courts employ a "materiality test," under which only *material* misrepresentations (those that would induce reasonable reliance) are actionable, and whether a plan is under "serious consideration" is a factor in the materiality inquiry. *See Ballone*, 109 F.3d at 124-25.

Under the "materiality test" an employer-administrator does not have a duty affirmatively to disclose deliberations regarding a new plan absent "serious consideration" of that plan, but it cannot make material misrepresentations regarding a plan in formation but not yet under "serious consideration." *See Martinez*, 338 F.3d at 429-31; *Wayne v. Pacific Bell*, 238 F.3d 1048, 1055 (9th Cir. 2001). *Martinez* offers the most mature synthesis of earlier courts of appeals efforts and we should adopt its approach. Moreover, the materiality test better accomplishes Congress' dual purposes of protecting employees' right to their benefits and encouraging employers to provide benefit plans. *See Martinez*, 338 F.3d at 430-31.[3]

---

[3] In this case, ComEd's human resources staff assured Mr. Beach that "absolutely" the company would not offer his department a severance package. Statement of Uncontested Facts ¶ 70. The evidence, in contrast, reflects that at the time a severance plan to certain department employees was a possibility. Moreover,

(continued...)

A final matter requires the full court's consideration. The panel majority, in dicta, seems to favor ComEd's argument that ERISA fiduciary liability arises only from deliberate deceit. *See* slip op. at 2. The plain language of the ERISA statute and the common law of trusts disapprove any scienter requirement in this context. *See Mathews v. Chevron Corp.*, 362 F.3d 1172, 1183 (9th Cir. 2004). Otherwise, employers-administrators have a mere duty to avoid committing fraud, which is at odds with *Varity*. *See Hudson v. Gen. Dynamics Corp.*, 118 F. Supp. 2d 226, 246 (D. Conn. 2000) ("As the Supreme Court noted in *Varity*, such conduct can create liability even among strangers," and "ERISA requires more of a fiduciary in discharging such duties than that he or she simply refrain from outright lying."). In sum, *Varity*, the common law of trusts, our fellow circuits, and the purposes of ERISA inform us that when an employer-administrator speaks—either directly or through its benefits representatives—it violates its fiduciary duties when it (1) misinforms a beneficiary knowing its statement is false, or (2) recklessly misinforms not knowing whether the statement is true or not, or (3) misinforms when it should have known the falsity of its statement. *See Wayne*, 238 F.3d at 1055.

This case presents an issue of exceptional importance. As the United States workforce ages and as companies continue to downsize through methods such as early retirement and voluntary separation programs, the role of ERISA has become more important. Litigation about the existence and scope of employer fiduciary duties under ERISA inevitably

---

[3] (...continued)
the staffs' statements were not mere personal opinion nor unadorned speculation—they relayed the *fact* that ComEd had made a corporate decision not to consider his department for a severance plan. As such, ComEd would be liable under the "materiality test."

will continue to grow as well. Congress has a right to expect that the judiciary will take the necessary steps to ensure that the Congressional will is not frustrated by judicial interpretations that frustrate the purpose of the statute. We need to hear this matter en banc and engage in thoughtful collegial deliberation.

A true Copy:

     Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*